**AETNA LIFE INS. CO. v. HUB HOSIERY MILLS et al.**

Civ. A. No. 6088.

District Court, D. Massachusetts.

Nov. 21, 1947.

Bailey Aldrich and Choate, Hall & Stewart, all of Boston, Mass., for plaintiff.

Bourgeois & Bourgeois, and Harvey, Harvey & Walker, all of Lowell, Mass., for defendants.

HEALEY, District Judge.

This is an action to cancel an insurance policy in the face amount of $40,000, written by the complainant on the life of the respondent, Alfred J. Traverse.

The complainant seeks to cancel the policy on the ground that one or more misrepresentations were made in the application for the policy, and that the policy did not take effect because the respondent Traverse was not in good health at the time the policy was delivered—good health at the date of delivery being a condition precedent.

### Findings of Fact

On August 13, 1946, the respondent Traverse signed an application for a policy of insurance in the face amount of $40,000 on the ten-year term plan, convertible to ordinary life insurance (without a medical examination and simply by paying the higher premium) at any time within the first eight years.

In his application for the policy, he stated that he had never consulted a physician for or suffered from any of a number of specified ailments or diseases, or from any other disease or illness not already mentioned; that no one had ever claimed to have found sugar in his urine; that he had not had regular or occasional health examinations, and had last consulted a physician in August 1941, which was for an infected foot. He also stated that he had never been an inmate of any hospital.

At the time of the application, Traverse was given a physical examination by the complainant's local physician, one Dr. Frank S. Caldicott, since deceased, who found nothing wrong with him, and found neither albumen nor sugar in his urine. Dr. Caldicott submitted his report, together with a specimen of urine to the complainant at its home office. An analysis of the specimen of urine was made in the laboratory at complainant's home office and revealed no albumen or sugar.

The complainant issued a policy numbered N 1503310 in the form applied for. On August 23, 1946, the policy was delivered at Boston to Walter F. Connor, an officer of the respondent Hub Hosiery Mills, which corporation was named the owner and beneficiary in the policy. At that time, the first annual premium in the amount of $585.20 was paid by the Hub Hosiery Mills, and the policy was thereupon assigned to the respondent Union National Bank of Lowell as collateral security for a loan.

At the time, Connor was attending a meeting between the former owners of the controlling interest in the Hub Hosiery Mills and himself. At this meeting, he and the respondent Traverse acquired the entire interest in the respondent corporation, the Hub Hosiery Mills. Traverse was not present at this meeting, but was at the Lowell General Hospital, which he had entered the day before for the purpose of having a checkup of his health.

On June 26, 1946, Traverse, while working in his yard, had experienced an attack of "chills" which lasted for a short period of time. He rested on a couch for sometime and when he felt better, he returned to his work in the yard. On that occasion, he did not consult a physician, but his wife, without his knowledge, talked to a physician over the phone about his condition.

On August 22, 1946, Traverse experienced a "chill" while at work at the Hub Hosiery Mills. He returned to his home where Dr. David Latham called to examine him, at the request of Mrs. Traverse. Being unable to determine the cause of the "chill", the physician suggested that Traverse go to the hospital for three days for a "check-up". At about 2 p. m. on the same day, Traverse entered the Lowell General Hospital, as suggested by Dr. Latham, and underwent several tests in an effort to obtain a diagnosis of his physical condition.

A reduction test for sugar in his urine made at about 6 a. m. on August 23, 1946, showed green. A repeat urine test made immediately afterwards, revealed no reduction in Benedict's solution. With no medication at all, his temperature decreased

progressively from 100 degrees on admission, to 98.6 degrees at 5 a. m. on August 23, 1946, where it remained thereafter during his stay at the hospital. No sugar tolerance test was made during his stay at the hospital. His condition on discharge from the hospital on August 24, 1946, was stated as "well". Final diagnosis was "No disease".

The respondent Traverse did not notify the complainant or its agent of his attack of "chills" on August 22, 1946, nor of his subsequent entrance into the hospital, at any time prior to the delivery of the policy.

Some time later, the complainant learned of Traverse's hospitalization and, at its request, Traverse, on September 5, 1946, underwent a sugar tolerance test. This test indicated that on September 5, 1946, Traverse had diabetes. He has been a mild or borderline diabetic ever since.

Traverse, who was 42 years old at the time of his application for the policy, had always enjoyed apparent good health over a long period of years, with the exception of the "chills" previously noted, and had never lost any time from his work because of illness.

Diabetes is a chronic disease from which one rarely recovers. It occasionally manifests itself by certain symptoms, none of which Traverse displayed prior to the delivery of the policy by the complainant. In many cases, however, diabetes may be present without a person having any complaints or symptoms. The presence of sugar in a person's urine is not a decisive test for diabetes, since in many cases, a person having no sugar in his urine has been found to have diabetes, and in other cases, a person having sugar in his urine has been found to be free of diabetes. The most conclusive test for diabetes is a sugar tolerance test.

The complainant does not require all applicants for insurance to undergo a sugar tolerance test. Such a test is made only when something appears from the preliminary examination of an applicant, such at the presence of a reducing substance in his urine, or a history suggesting the possibility of diabetes.

If a sugar tolerance test shows that a person has diabetes, it does not necessarily mean that that person has had diabetes for any specific period in the past. This is especially true when the person has had no symptoms of diabetes.

### Discussion

A complainant who seeks the cancellation of a policy of insurance, must sustain the burden of proving by a preponderance of the evidence the facts upon which it relies in order to prevail. Massachusetts General Laws, Chapter 175, § 186, is as follows: "No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

Thus, to prevail in this action on the ground of misrepresentation, the complainant must prove, first, that there was an actual misrepresentation by Traverse, and, secondly, that if he did make a misrepresentation, it either was with an actual intent to deceive the complainant, or that it increased the risk of loss.

There is not sufficient evidence to prove that the failure by Traverse to mention his condition of "chills" on June 26, 1946, constituted a misrepresentation, or that he made any misrepresentation concerning the events that transpired on that occasion. I, therefore, find that the respondent made no misrepresentation when he filled out the application for the policy on August 13, 1946.

However, under Massachusetts law, an application for insurance relates to the time the policy is delivered. Gabbett v. Connecticut General Life Insurance Company, 303 Mass. 433, 21 N.E.2d 950. If, between the time an application is made to the insurer and the time when the policy is issued, the applicant discovers facts which make portions of his application no longer true, and he fails to make a full disclosure of such facts to the insurer, he

is in fact guilty of making misrepresentations on his application.

■ If such misrepresentations are made with an actual intent to deceive, or if the matter known to the applicant, but not disclosed to the insurer, increases the insurer's risk of loss, then the policy is cancellable.

■ In the instant case, the failure of Traverse to notify the complainant of Dr. Latham's treatment of him on August 22, 1946, and of his hospitalization on that date, and of the disclosure of sugar in his urine on August 23, 1946, constituted technical misrepresentations in his application for insurance.

However, in my opinion, the failure of Traverse to disclose those facts was not the result of any actual intent on his part to deceive the complainant. Therefore, unless there was a material change in his condition which was known to him, and which in fact increased the complainant's risk of loss, Traverse's failure to inform the complainant of these facts would not render the policy voidable. Gabbett v. Connecticut General Life Insurance Company, supra; Massachusetts General Laws (Ter. Ed.) Chapter 175, § 186.

■ The facts here do not show that Traverse's condition was changed in any material way during the interim. The fact that he experienced a chill and called a doctor to prescribe for it, or that he voluntarily entered the hospital for an examination which resulted in a diagnosis of "no disease", did not constitute a material change in his condition which would disclose to him any increase in the complainant's risk of loss under the policy. Also, the fact that one urine test disclosed the presence of a reducing agent, was considered of no consequence by his physician when a second test made immediately thereafter revealed the presence of no sugar. The net result of this episode, in so far as Traverse was concerned, was an assurance that he was then in good health. I, therefore, find that there was no material change in Traverse's condition that was known to him before the delivery of the policy. I also find that there was no material change in his condition at that time which increased the risk of loss. Under the circumstances, I find that the policy was not cancellable because of any alleged misrepresentations in the application.

■ The remaining question to be determined is whether or not the respondent Traverse was actually in good health when the policy was delivered on August 23, 1946. The good health of Traverse at that time was made a condition precedent to the policy becoming effective by the provision in the application "that no such policy shall become effective until the first premium upon it is paid during the good health of the insured * * *" In considering this question, Traverse's good faith or knowledge of his condition is irrelevant.

Of course, if Traverse actually had diabetes on August 23, 1946, he was not in good health, even though he showed no symptoms of that disease at the time. Barker v. Metropolitan Life Insurance Company, 188 Mass. 542, 74 N.E. 945.

The complainant's expert on diabetes testified that a sugar tolerance test is the true, and only conclusive, way to discover diabetes. He further testified that in many cases, a person who has no symptoms and appears to be in good health, has been found by this test to have diabetes. However, no evidence was presented to show how long a person must have the disease in order for it to be disclosed by such a test. Although complainant's expert testified that a person in whom the existence of diabetes is revealed by a sugar tolerance test probably had the disease for a period of several weeks prior to the test, he was unwilling to give a categorical opinion on that point. His opinion, therefore, that Traverse had diabetes on August 23, 1946, was inconclusive. In the absence of more definite evidence on this point, which is the crux of the case, in so far as this question of good health is concerned, I am unable to find that Traverse was not in good health on August 23, 1946.

Ultimate Findings of Fact

1. The written application signed by Traverse on August 13, 1946, contained no misrepresentation of fact.

2. The failure of Traverse to notify the complainant of facts which made portions of his application no longer true, constituted misrepresentations in the applica-

tion for insurance, but they were not made by Traverse with an actual intent to deceive the complainant.

3. The misrepresentations in the application, resulting from the failure of Traverse to notify the complainant of conditions on August 22 and 23, 1946, that made portions of his application no longer true, were not misrepresentations of matters which increased the complainant's risk of loss.

4. Traverse has not been shown to have had diabetes prior to or at the time of the delivery of the policy on August 23, 1946.

5. The complainant has failed to sustain the burden of proving by a preponderance of the evidence that the respondent Traverse was not in good health when the policy was delivered on August 23, 1946.

### Conclusion of Law

Upon the basis of the above findings of fact, I conclude that the policy of insurance N 1503310 is not void, and that it should not be surrendered up to the complainant for cancellation.