BENJAMIN ZAKON vs. METROPOLITAN LIFE INSURANCE
COMPANY
(and four companion cases[1]).

Suffolk.    October 3, 1951. — March 6, 1952.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & WILLIAMS, JJ.

*Insurance*, Disability insurance.    *Words*, "Work, occupation or business."

A finding that an insured was totally and permanently disabled so as to
   be prevented from engaging in any work, occupation or business for
   compensation, gain or profit within the meaning of a disability insur-
   ance contract was warranted by evidence that previous to an accident
   resulting in amputation of his leg he had been engaged in real estate
   development and mortgage transactions, and that during the period in
   question after the amputation he suffered great and constant pain
   affecting his nervous system and power to concentrate and was able
   to engage only in certain business transactions which, although re-
   munerative, were merely occasional and did not necessarily indicate
   a continuing and steady earning capacity on his part.

FIVE ACTIONS OF CONTRACT.    Writs in the Superior Court
dated January 17, 1949, and February 15, 1949.

The actions were tried before *Brogna*, J.

*E. J. Duggan*, for the defendants Metropolitan Life
Insurance Company and another.

*B. Aldrich*, for the defendants Mutual Trust Life In-
surance Company and another.

*W. I. Badger, Jr.*, (*W. H. Ford, Jr.*, with him,) for the
defendant The Travelers Insurance Company.

*J. H. Soble*, for the plaintiff.

WILLIAMS, J.    These are five actions of contract to re-
cover total and permanent disability benefits alleged to be
payable under supplementary contracts attached to cer-

---

[1] The companion cases are by the same plaintiff against Mutual Trust Life
Insurance Company, The Travelers Insurance Company, The Mutual Life
Insurance Company of New York and New York Life Insurance Company,
respectively.

tain life insurance policies issued to the plaintiff by the defendant companies. See G. L. (Ter. Ed.) c. 175, § 24. The actions were tried together and at the close of the evidence the respective defendants filed motions for directed verdicts which were denied subject to their respective exceptions. These exceptions are now before us on a consolidated bill wherein the only question presented is whether the evidence warranted a finding of fact by the jury that the plaintiff was totally and permanently disabled within the meaning of those words as used in the different policies. Although the language of the policies differs somewhat, it is agreed that the differences are not material to the question presented. Each policy provides substantially for the payment of disability benefits while the insured is totally and permanently disabled so that he is prevented from engaging in any work, occupation or business for compensation, gain or profit.

The plaintiff was injured in an automobile accident on March 11, 1944, and as a result suffered the amputation of his left leg. Payments for total and permanent disability were made to him by the companies until the fall of 1948 when payments were discontinued. The present actions are to recover payments alleged to be due since the respective dates of discontinuance. Verdicts were rendered for the plaintiff in all actions, and in two of the actions, where declarations in set-off were filed to recover back benefit payments made to the insured from May, 1947, until the times they were discontinued in 1948, verdicts were returned for the defendant in set-off. We understand that no question is raised as to the verdicts in set-off.

It is the contention of the defendants that the plaintiff's own testimony relating to his physical and mental activity after the accident, by which, in the absence here of more favorable evidence, he was bound (see *Perry* v. *Hanover*, 314 Mass. 167, 170) required the judge to rule that total and permanent disability had not been shown and to direct verdicts for the defendants. This testimony was substantially as follows. At the time of the trial the plaintiff

was sixty years of age, married, and living in Brookline. Before his accident his occupation was to develop land and to build houses. He was accustomed personally to supervise most of the work of development and building. He interviewed brokers who had land and buildings for sale and worked with architects on plans for buildings. A small part of his business was interviewing applicants for loans. He would take construction mortgages and supervise the construction of the buildings on which he held such mortgages. He owned land in Newton and Wellesley and maintained an office on Beacon Street in Brookline in which office a secretary was employed.

By reason of the injury to and the amputation of his leg following the accident he suffered great pain. In December, 1944, a second operation was required which left him with only a four inch stump. There was "excruciating" pain in his leg, and a sense of pain in his so called "phantom" foot. He had spasms in his leg. "The stump would jump up and his nerves become shattered; the pain would go through his head." The spasms would come at intervals and would last for several hours, and "came practically every day." They rendered him unable to concentrate and he resorted to narcotics prescribed by his physician. He was unable to use an artificial limb during 1946 and his condition remained the same. In March, 1947, he was in Miami, Florida. In December, 1947, he went to Arizona and during his trip his pains and spasms were more severe than before. On his way home he attended the Mayo Clinic in Minnesota. He has taken narcotics "from the day of his accident to the present day." Emotional disturbances cause him pain and excitement upsets his nerves.

During the period from 1947 through 1949 he continued to maintain his office in Brookline but did not employ a secretary. The word "Insurance" appeared on the window of his office and his telephone was listed in the telephone book under "Benjamin Zakon, Mortgages." Since his accident he has not bought any land but has sold some land previously owned by him. In March, 1947, while in Miami,

he negotiated a construction mortgage on an apartment house in the amount of $100,000 in which he and one Werman each owned a half interest. In 1948 he also took back a mortgage as security on some of the land which he was selling and executed partial releases from this mortgage lot by lot during 1948 when the lots were sold. In 1948 with Werman he took a construction mortgage on property at 314 Commonwealth Avenue and received in connection therewith a bonus of $3,000. With Werman he received substantial amounts of interest on this mortgage. In 1948 he also took a mortgage on 108 Longwood Avenue in Brookline and received a substantial amount of interest thereon. In 1949 he had a one-third interest in a "Beacon Towers Corporation" construction mortgage amounting to $100,000. In connection with these mortgages he relied on others to make the necessary investigations prior to taking them and to supervise the building operations when the mortgages were of a construction nature. During this period he went to his office two or three times a week, a distance of approximately one tenth of a mile. He travelled to some extent by train and plane and used buses and street cars. With some difficulty he is able to climb stairs.

From this summary of the plaintiff's testimony it is plain that, in spite of his pain and physical handicap, he has performed acts of a business nature which have resulted in the receipt by him of a relatively large sum of money during the two years immediately preceding the bringing of these actions. The money has come from interest on mortgages and from the sale of land which he owned. He has not supervised building construction. To a limited extent he has conferred with his attorneys and with business associates. The words total and permanent disability in the policies are qualified by provisions that the disability be such as to prevent the insured from engaging in any work, occupation or business. We have held that "Complete physical or mental incapacity of the insured . . . is not essential to his total disability . . .. It is sufficient that his disability is such that it prevents him from performing

remunerative work of a substantial and not merely trifling character." *Adamaitis* v. *Metropolitan Life Ins. Co.* 295 Mass. 215, 219. *Rezendes* v. *Prudential Ins. Co.* 285 Mass. 505. *Rosemont* v. *Equitable Life Assurance Society*, 301 Mass. 139. *Azevedo* v. *Mutual Life Ins. Co.* 308 Mass. 216, 219. The loss of the plaintiff's leg, which in and of itself might not be sufficient totally to disable him (see *Hummer's Case*, 317 Mass. 617, 623–624), must be considered in connection with the effect of the extreme and constant pain on his nervous system and power to concentrate. See *Nickolopulos* v. *Equitable Life Assurance Society*, 113 N. J. L. 450; *Mutual Life Ins. Co.* v. *Dowdle*, 189 Ark. 296; *Hetzel* v. *Pacific Mutual Life Ins. Co.* 108 W. Va. 22; *Trucken* v. *Metropolitan Life Ins. Co.* 303 Mass. 501. Whether his claim of suffering is extravagant and excessive is not for us to decide. It is implicit in the testimony of the plaintiff which the defendants contend requires a ruling of law. The business transactions of the plaintiff while highly remunerative were occasional and distributed over a period of approximately two years. In the main, proof of his ability to work must be derived from the fact of their performance. Such performance in the circumstances does not necessarily prove a continuing and steady ability to perform. The terms work, occupation and business as used in the policies, all suggest a degree of regularity of performance. In *Boss* v. *Travelers Ins. Co.* 296 Mass. 18, 23, it is said, "'Engaging in' an 'occupation or employment for wage or profit' imports a continuing earning capacity upon which one can rely to a substantial degree for a livelihood." It was for the jury to say whether the plaintiff had such earning capacity as distinguished from an ability to perform at different times acts of the character of those to which he had testified. In the opinion of a majority of the court it could not be ruled that there was not evidence for the jury of total and permanent disability.

*Exceptions overruled.*