JOSEPH S. KAUFMAN *vs.* NATIONAL CASUALTY COMPANY.

Suffolk.    February 9, 1961. — April 6, 1961.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Insurance,* Disability insurance. *Practice, Civil,* Requests, rulings and instructions.

In an action on a disability insurance policy, requests for rulings by the defendant to the effect that proof of good health and absence of heart disease or any bodily infirmity prior to the issuance of the policy was essential to recovery by the plaintiff were properly refused where it did not appear that those factors were conditions precedent to the taking effect of the policy or recovery thereon.    [415]

A judge hearing an action without jury may properly refuse a request for ruling based on assumed facts which he is not required to find.    [416]

The facts that after applying for an extension of the term of a disability insurance policy and before the issuance of a rider extending it the insured suffered a heart attack and did not notify the insurer thereof did not as matter of law require a conclusion that within G. L. c. 175, § 186, there was an actual intent to deceive the insurer on the part of the insured or the risk of loss was increased, or that the insured was barred of recovery on the extended policy for disability due to his heart condition.    [416–417]

In an action on a disability insurance policy providing for payments if illness should "wholly and continuously disable and prevent the Insured from performing any and every duty pertaining to his occupation or profession," it was proper to refuse requests by the defendant for rulings that the plaintiff was not "totally disabled within the terms of the policy" if he "went to his office and attended to some business" and that he must prove that he was "wholly and continuously incapable of performing any remunerative work and . . . unable to perform any work for compensation, gain or profit . . . [or to perform] any gainful occupation."    [413, 417]

CONTRACT.    Writ in the Superior Court dated March 16, 1959.

The action was heard by *Thompson, J.,* without jury.

*Clement J. Redmond, (Stephen P. Weston* with him,) for the defendant.

*Daniel F. Featherston, Jr.,* for the plaintiff.

SPIEGEL, J. This action of contract is brought to recover upon an accident and sickness insurance policy issued by the defendant on April 2, 1952, and upon an amendment rider issued on April 2, 1958, and made a part of the policy.

Part V[1] of the policy provided for monthly sickness indemnity for total disability commencing with the eighth day of such disability for a period not to exceed twelve months as a result of any one sickness. The amendment rider extended the coverage for an additional twelve months.

The plaintiff claimed permanent disability as a result of a heart attack suffered on April 1, 1958. The defendant paid to the plaintiff all sums due under the policy from April 2, 1958, to September 30, 1958, but has refused to pay anything further after September 30, 1958.

The action was tried before a judge of the Superior Court without a jury. The judge made a finding for the plaintiff in the sum of $5,868.81.

The defendant's bill of exceptions relates solely to the trial judge's denial of the defendant's requests for rulings numbered 1, 2, 8, 10, 11, 12, 13, and 15.

The plaintiff testified that he was a lawyer and manager of the Prudential Acceptance Company, a commercial financing company; that he had been a sole operator of the company, but that his son was with him in 1958; that the policy in question was issued to him on April 2, 1952, under a group policy of the Massachusetts Bar Association; that sometime in March, 1958, a representative of the defendant came to his office and told him that the defendant had a new provision whereby the disability benefits could be extended for another year upon the payment of an additional premium; that he was asked to sign an application for the new

---

[1]                    ''Monthly Sickness Indemnity
                      ''Part V.

''Total Disability. If 'such sickness' shall wholly and continuously disable and prevent the Insured from performing any and every duty pertaining to his occupation or profession, the Company will pay the Monthly Sickness Indemnity for the period, commencing with the eighth (8th) day, the Insured shall be so disabled and under the regular care and personal attendance of a legally qualified Physician or surgeon, other than himself, but not to exceed twelve (12) months as a result of any one sickness.''

provision in blank and that he did so; that the agent did not go over the questions on the application with him; that when the defendant's representative left the plaintiff's office with the signed application it was still in blank; that the amendment rider was issued and became attached to the policy on April 2, 1958; that after he had a near blackout he entered the Beth Israel Hospital on April 1, 1958, and was there about two weeks and that he so notified the defendant as soon as he got home from the hospital; that he did not go to work for several months and that toward the end of summer he began to go in a couple of days to break the monotony of sitting at home; that prior to April 1, 1958, he had appeared in court on many occasions but did next to nothing in the way of legal work after April 1, 1958; that since April 1, 1958, he had seen his doctor regularly and the last time he saw him was October 23, 1959; and that at the time of his testimony he did not feel very well. The plaintiff further testified that some years prior to his signing the application for the amendment rider he had been treated for what he thought was a blood circulation difficulty but what was in reality a heart condition.

The defendant introduced evidence showing that the plaintiff from the latter part of August, 1958, up to the day of the trial, November 24, 1959, had gone to his office two or three times a week for about four hours a day, and that on these occasions he discussed business with his son. The representative of the defendant company testified that he had written "the answers which the plaintiff gave him" to the questions contained in the application for the amendment rider reciting that he, the plaintiff, was in good health and was free of any disease of the heart. Letters sent to and from each of the parties and introduced in evidence showed that the plaintiff refused to submit to a physical examination by a doctor of the defendant's choosing, but would consent to be examined by an "impartial and competent physician." The plaintiff later agreed to submit to an examination by the physician named by the defendant but the defendant informed the plaintiff that it considered the contract broken by the plaintiff.

The trial judge filed a memorandum which stated: "1. I find the plaintiff did not make the representations in the application dated March 24, 1958, and that said application was signed in blank by him. 2. I find the plaintiff wholly and continuously disabled within the meaning of the policy. 3. I find the plaintiff did not violate Part VIII, Section 8,[2] of the policy."

The findings of the trial judge are supported by the evidence.

The defendant's first request for ruling[3] was properly denied by the trial judge. It does not appear that absence of any disease of the heart or any bodily infirmity prior to the date of the issuance of the rider on the policy was made a condition precedent to recovery by the plaintiff. The trial judge cannot be called upon to give a request which called for findings of fact, or rulings of law based upon findings of fact which the judge was not required as a matter of law to make on the evidence. *DeCristafaro* v. *Boston Elev. Ry.* 304 Mass. 680.

The defendant's second request[4] states an incorrect principle of law and was therefore properly denied. The second request states a correct statement of the law in the situation where sound health is made a condition precedent to the taking effect of a policy of insurance as a binding contract. *Fondi* v. *Boston Mut. Life Ins. Co.* 224 Mass. 6, 7. *Connolly* v. *John Hancock Mut. Life Ins. Co.* 322 Mass. 678, 681, 682. See *Rappe* v. *Metropolitan Life Ins. Co.* 322 Mass. 438, 440. It cannot be said on viewing the evidence that the present case is such a situation.

We think the defendant's requests for rulings numbered 8, 10, and 11 could not have been given in the strict form in which they are phrased.

---

2 "The Company shall have the right and opportunity to examine the person of the Insured when and so often as it may reasonably require during the pendency of claim hereunder, and also the right and opportunity to make an autopsy in case of death where it is not forbidden by law."

3 "1.  That the plaintiff had [did not have?] any disease of the heart or any bodily infirmity prior to April 2, 1958, that [the?] date of the issuance of the rider on the policy, is proper condition precedent to recovery by the plaintiff."

4 "2.  The burden is on the plaintiff to prove that he was in good health prior to April 2, 1958; otherwise the plaintiff cannot recover on the rider issued on the policy."

In considering the eighth request for ruling[5] there is some question whether the plaintiff can be brought within the purview of G. L. c. 175, § 186,[6] in the light of the trial judge's finding that "the plaintiff did not make the representations in the application" for the rider policy; but assuming that he can and further assuming that the trial judge found as a fact the two suppositions embraced in the request, the trial judge would not be required as a matter of law to reach the conclusion stated in the request for ruling. The trial judge could have found that the plaintiff had a heart attack before the issuance of the rider on the policy and that he gave no notice of this change of condition to the defendant and still have found that the plaintiff was possessed of no actual intent to deceive (*Lennon* v. *John Hancock Mut. Life Ins. Co.* 339 Mass. 37, 40–41; see 19 B. U. L. Rev. 294–295) and that risk of loss to the defendant was not increased. *Foss* v. *Mutual Life Ins. Co.* 247 Mass. 10, 15–16. *Schiller* v. *Metropolitan Life Ins. Co.* 295 Mass. 169, 178. See 19 B. U. L. Rev. 109–110. Accordingly, the trial judge was asked to make a finding of fact which he was not required to make and the request for ruling was properly denied. *DeCristafaro* v. *Boston Elev. Ry., supra.*

Request for ruling numbered 10[7] was properly denied for the reasons set out above.

The defendant's eleventh request for ruling[8] was prop-

---

[5] "8. If the court finds that the plaintiff had a heart attack of a coronary thrombosis before April 2, 1958, the date of the issuance of the rider on the policy, and if the court finds that the plaintiff gave no notice to the defendant of the change in the plaintiff's physical condition then the court should find that this action of the plaintiff constituted an actual intent to deceive and increased the risk of loss to the defendant and the plaintiff cannot recover."

[6] "No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

[7] "10. The failure by plaintiff to disclose his heart condition to the defendant before April 2, 1958, the date of the issuance of the rider on the policy, affected the risk of loss to the defendant and makes the contract of insurance by the rider voidable at the option of the defendant."

[8] "11. If, while the defendant deliberated on the issuance of the rider on the policy, the plaintiff discovered facts which made portions of his application no longer true, the plaintiff was bound to make a full and complete disclosure of the true facts to the defendant and if he failed to do so, the defendant can despite that it has issued the rider on the policy, refuse to make payments to the plaintiff and plaintiff cannot recover."

erly denied as inapplicable to the facts as found by the trial judge and as containing an incorrect statement of the law. Since it was found as a fact by the trial judge that the plaintiff did not make the representations contained in the application for the rider policy he could not have known that the change in his physical condition rendered the application no longer true. The defendant could avoid the effect of the rider policy on the basis of a misrepresentation in the application for the policy prior to its issuance only if the misrepresentation was made with an actual intent to deceive or if it effected an increase in the risk of loss to the defendant. G. L. c. 175, § 186. *Lennon* v. *John Hancock Mut. Life Ins. Co.* 339 Mass. 37. *Aetna Life Ins. Co.* v. *Hub Hosiery Mills,* 74 F. Supp. 599, 601–602 (D. Mass.). The request for ruling did not contain a reference to the requisites of an intent to deceive or an increase in the risk of loss so could not be given as phrased.

Requests for rulings numbered 12[9] and 13[10] were properly denied by the trial judge. The requests were immaterial in the light of the trial judge's finding that "the plaintiff [is] wholly and continuously disabled within the meaning of the policy." The requests also reflect an incorrect impression of the definition of total disability. See *Rezendes* v. *Prudential Ins. Co.* 285 Mass. 505, 512–513; *Zakon* v. *Metropolitan Life Ins. Co.* 328 Mass. 486, 489–490.

The defendant's request for ruling numbered 15[11] was properly denied as immaterial on the basis of the trial judge's third finding of fact.

*Exceptions overruled.*

---

[9] "12. If the court finds that the plaintiff went to his office and attended to some business, then it cannot be said that he was totally disabled within the terms of the policy."

[10] "13. The plaintiff must show that he was wholly and continuously incapable of performing any remunerative work and that he is unable to perform any work for compensation, gain or profit and from performing any gainful occupation."

[11] "15. Part VIII, § 8, of the policy is a valid provision of the policy and the failure of the plaintiff to submit to an examination by a doctor of the defendant's choice constitutes a breach of the contract of insurance by the plaintiff and plaintiff cannot recover."