DELLA F. GABBETT *vs.* CONNECTICUT GENERAL LIFE INSURANCE COMPANY.

Suffolk. May 5, 1939. — June 29, 1939.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Insurance*, Accident, When contract of insurance is made, Application, Misrepresentations. *Contract*, What constitutes.

A policy of accident insurance did not become operative as a contract until the application therefor was accepted by the insurer and the policy was issued.

A representation of fact in an application for a policy of accident insurance, which, though true when the application was made, had become false to the applicant's knowledge when the policy was issued at a later date and increased the risk of loss, was an effective defence to an action on the policy.

CONTRACT. Writ in the Superior Court dated December 7, 1938.

A verdict for the defendant was ordered by *Good*, J.

*F. B. Frederick*, (*H. C. Perkins* with him,) for the plaintiff.

*R. Wait*, (*B. Aldrich & F. H. Nash* with him,) for the defendant.

Cox, J. The plaintiff, a registered nurse, had an accident insurance policy, in a company other than the defendant, that expired on October 30, 1936. On or before September 30, 1936, she signed an undated application for an accident insurance policy of the defendant. She delivered the application to the defendant's agent, telling him that the policy was to take the place of her other policy. She expected the defendant's contract to take effect on October 30. There is no question as to the payment of

premium.   In her application the plaintiff answered the
following questions in the negative.   "21.   (a) Have you
ever been advised to have a surgical operation?   (b) Have
you ever had a surgical operation performed?"   On October
14, 1936, the plaintiff was operated upon for the removal
of a bunion on her left foot.   The operation was performed
by the removal of a wedge-shaped section of the big toe
knuckle, resulting in a folding and resection of the bone,
shortening the toe and virtually making a new joint.   The
policy was issued on October 30, 1936.   Neither the de-
fendant's agent, nor the defendant, knew of this operation
of October 14, 1936, at the time the policy was issued, and
the defendant had no actual knowledge of the operation
until a long time after.   No question of laches is involved.
The plaintiff admitted that she did not see or communicate
with the agent during the month of October, 1936.

The jury could have found that prior to the time the
plaintiff signed the application she had been advised to
have the operation.   The plaintiff herself testified that she
had had a bunion removed on her right foot by an operation
in 1928, that after the second operation she returned to her
work as a registered nurse in about four weeks from Octo-
ber 14, 1936, and that she could have returned at the end
of three weeks.   About three weeks after she returned to
work she injured her back, and seeks to recover for that
injury in this action upon the policy issued by the defend-
ant.   At the close of the evidence the judge submitted four
questions to the jury: "1.   When the plaintiff gave the
application for insurance to Mr. Carmichael [the agent]
did it contain a misrepresentation?   2.   If the previous ques-
tion is answered in the affirmative, was such misrepresenta-
tion made with actual intent to deceive?   3.   If you answer
the first question in the affirmative, did the matter misrepre-
sented increase the risk of loss?   4.   Did the operation on
October 14 increase the risk of loss?"   The jury answered
the first question in the affirmative, the second and third
in the negative, and the fourth in the affirmative, where-
upon the judge, upon motion by the defendant, ordered a
verdict for the defendant.   The plaintiff excepted.   The

only issue raised by this bill of exceptions is whether the judge erred in allowing the defendant's motion. The bill of exceptions states that the defendant's answer admitted all the allegations in the plaintiff's declaration, but pleaded "certain facts as an equitable defense in proper form to cover the matters hereinafter set forth."

The equitable defence was properly pleaded, and, if established, is a good defence to the plaintiff's action. G. L. (Ter. Ed.) c. 231, § 31. *Barton* v. *Radclyffe*, 149 Mass. 275, 280. *Bancroft Trust Co.* v. *Canane*, 271 Mass. 191, 198, 199. See *Corbett* v. *Craven*, 193 Mass. 30; *Stevens* v. *William S. Howe Co.* 275 Mass. 398.

We think there was no error. The policy of insurance as a contract did not become operative until the offer of the plaintiff by way of her application was accepted by the defendant, and the policy was delivered as of its effective date, October 30, 1936. *Markey* v. *Mutual Benefit Life Ins. Co.* 103 Mass. 78, 89. *Allen* v. *Massachusetts Mutual Accident Association*, 167 Mass. 18. *Carleton* v. *Patrons' Androscoggin Mutual Fire Ins. Co.* 109 Maine, 79, 83. *Stipcich* v. *Metropolitan Life Ins. Co.* 277 U. S. 311, 316. In some of the cases involving facts somewhat similar to those in the case at bar, the application for insurance has been described as a continuing representation. The important question is to what point of time does the application relate. We are of the opinion that that time is when the contract of insurance is made or, as was said in the case of *Kester* v. *Metropolitan Life Ins. Co.* 228 Mo. App. 550, at 554, "the representations . . . must be regarded in law as though they were made at the time the policy was delivered." As qualified by provisions of our statutes, the language in *Stipcich* v. *Metropolitan Life Ins. Co.* 277 U. S. 311, 316, is pertinent: "Insurance policies are traditionally contracts *uberrimae fidei* and a failure by the insured to disclose conditions affecting the risk, of which he is aware, make the contract voidable at the insurer's option." In that case at page 317, the court goes on to say: "If, while the company deliberates, he [the applicant] discovers facts which make portions of his application

no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure.   If he fails to do so the company may, despite its acceptance of the application, decline to issue a policy . . . or if a policy has been issued, it has a valid defense to a suit upon it."

The jury, by its answer to question No. 4, found that the operation of October 14 increased the risk of loss.   If the operation had been performed prior to the making of the application, and the plaintiff had concealed it, the answer of the jury that the operation increased the risk of loss would bring the case within G. L. (Ter. Ed.) c. 175, § 186, which provides that "No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."   The jury found that there was a misrepresentation in the application for insurance at the time she gave it to the agent, but that such misrepresentation was not made at that time with intent to deceive, and that that matter did not increase the risk of loss.   These findings are not decisive.   The jury, in effect, has also determined that between the time of the making of the application and the issuance of the policy something happened to the plaintiff which increased the risk of loss, or, in other words, that during that interval there was a material change in the condition of the plaintiff.   We think that she had a duty to inform the defendant of this change, and that, in view of the jury's finding, her failure to do so is a defence to her action.   The plaintiff contends that in many of the cases in which this same question has arisen, the change in the condition of the insured was of a serious character, but the answer to this contention is the finding of the jury that the change in the plaintiff's condition increased the risk of loss.   The point is that the circumstances of the plaintiff were altered to her knowledge after she made her application, but the de-

fendant had no knowledge of this change. It well may be that if the defendant had had this knowledge it would not have issued the policy. In any event, it has the right to complain of the plaintiff's failure to inform it. Our view is supported by the great weight of authority. *Canning* v. *Farquhar*, 16 Q. B. D. 727. *Stipcich* v. *Metropolitan Life Ins. Co.* 277 U. S. 311. *Whitley* v. *Piedmont & Arlington Life Ins. Co.* 71 N. C. 480. *Harris* v. *Security Mutual Life Ins. Co.* 130 Tenn. 325. *Cummings* v. *Connecticut General Life Ins. Co.* 101 Vt. 73. *Kester* v. *Metropolitan Life Ins. Co.* 228 Mo. App. 550. *Butler* v. *New York Life Ins. Co.* 213 N. C. 384. *New York Life Ins. Co.* v. *Gay*, 36 Fed. (2d) 634. *Equitable Life Assurance Society* v. *McElroy*, 83 Fed. 631. *Western & Southern Life Ins. Co.* v. *Tomasun*, 358 Ill. 496. Compare *Doyle* v. *Goldberg*, 294 Mass. 105; *Royal Indemnity Co.* v. *Perry*, 296 Mass. 149.

*Exceptions overruled.*