MADELEINE RAPPE *vs.* METROPOLITAN LIFE INSURANCE
COMPANY.

Suffolk.    October 9, 1946. — November 4, 1946.

Present: FIELD, C.J., QUA, WILKINS, & SPALDING, JJ.

*Insurance,* Life insurance: representations, application.    *Evidence,*
   Death certificate.    *Error,* Whether error harmful.    *Practice, Civil,*
   Ordering verdict; Charge to jury; Exceptions; whether error harmful.
   *Words,* "Inmate."

Upon an exception to the denial of a motion for a directed verdict for
   the defendant in an action upon a policy of life insurance, where the
   defendant in its answer had set up an affirmative defence that the
   insured in his application for insurance had made certain specified
   misrepresentations, the trial judge must be deemed to have made his
   ruling on the pleadings as they stood, and other misrepresentations
   possibly shown by the evidence could not be considered by this court.
A ruling as a matter of law was not required that the defendant in an
   action upon a policy of life insurance had sustained the burden of
   proving that the insured in his application for the policy had mis-
   represented that his health was good when he made the application,
   that he never had been an "inmate" of a hospital, that he had no
   "usual medical attendant," that he never had had any "illness," and
   "especially" that he never had had a disease of the heart, where none
   of the evidence tending to show falsity of representation bound the
   plaintiff; there was evidence that the insured had worked and been
   active up to the time of his death and no evidence that he had ever
   been bedridden or unable to work because of his health, although he
   had made numerous visits to a hospital; there was no evidence that
   the insured had been an "inmate" of a hospital in the ordinary sense
   of that word; there was no evidence that the insured had had any
   "usual medical attendant" other than physicians with whom he came
   in contact at different times in various departments of the hospital;
   and the evidence as to presence of disease of the heart was conflicting.
In a question in an application for a life insurance policy, whether the
   applicant had ever been an "inmate" of a hospital, that word must be
   construed in its ordinary sense as meaning a person who lives or
   dwells in a particular place for an appreciable period of time; and
   falsity of a negative answer to the question was not shown where it
   did not appear that the applicant had ever spent a night at a hospital
   to which he had made several visits.
Questions in an application for a life insurance policy as to the applicant's
   "condition of health" and whether he had ever had an "illness" or a
   disease of the heart, called for answers only to the best of his knowledge

and belief, and in determining the truth or falsity of his answers a wide allowance must be made for difference of opinion or judgment as to what constitutes good or bad health or an illness.

At the trial of an action upon a policy of life insurance, where there was conflicting evidence upon a defence of misrepresentations by the insured with intent to deceive in his application for the policy, or of misrepresentations as to matters which increased the risk of loss, it was error to refuse rulings requested by the defendant that if such a misrepresentation was made the verdict should be for the defendant, and the error was not cured by a charge which failed to state clearly and positively the basic conditions under which, under G. L. (Ter. Ed.) c. 175, § 186, the defendant would be entitled to prevail.

It was error, at the trial of an action upon a policy of life insurance, where there was in evidence a death certificate stating as the cause of death, "Natural causes, probably Acute Cardiac Failure," to refuse to grant requests by the defendant for rulings, "The death certificate is prima facie evidence that the insured's death was due to cardiac failure"; "'Prima facie' evidence means evidence which not only remains evidence throughout the trial, but, in the absence of evidence to the contrary, compels a finding of the fact of which it is evidence."

CONTRACT. Writ in the Superior Court dated May 25, 1944.

The case was tried before *R. M. Walsh*, J.

*W. A. Ryan*, for the defendant.

*F. G. Lichtenstein & G. A. Goldstein*, for the plaintiff, submitted a brief.

QUA, J. On October 1, 1942, the defendant issued a policy on the life of Albert Rappe. He died May 26, 1943. This action is by the beneficiary named in the policy. The defendant relies entirely upon the affirmative defence set forth in its answer that in the application for the policy the insured falsely represented (1) that his health was good; (2) that he had never been an "inmate" of a hospital; (3) that he had no "usual medical attendant"; (4) that he had never had any "illness"; and (5) "especially" that he had never had a disease of the heart. The defendant alleges that these misrepresentations were made with actual intent to deceive and that the matters misrepresented increased the risk of loss. G. L. (Ter. Ed.) c. 175, § 186. There was a verdict for the plaintiff. The defendant excepts to the denial of its motion for a directed verdict in its favor, to the denial of certain of its requests for rulings, and to portions of the charge.

It appears from the copy of the application, which was attached to and made "part" of and "the basis" and the "consideration" of the policy, and which, with the policy itself, constituted "the entire contract between the parties," that the insured did make these representations, as well as others which cannot enter into this decision since they were not contained in the answer and as against the excepting party the judge must be deemed to have made his rulings on the pleadings as they stood. *Brasslavsky* v. *Boston Elevated Railway,* 250 Mass. 403, 404. *Puro* v. *Heikkinen,* 316 Mass. 262, 266. *Zarski* v. *Creamer,* 317 Mass. 744, 747.

The evidence introduced by the defendant to establish its defence will now be stated in summary form. The record of death gave as the cause of death "Natural Causes, probably Acute Cardiac Failure." A hospital record which it was agreed related to the insured disclosed an entry dated April 29, 1940, and later a series of entries beginning April 1, 1941, eighteen months before the date of the policy, and continuing at irregular intervals, but at least once in every month, until June 10, 1942, and once in October and November of that year, these last two entries being after the date of the policy. Until the early part of 1942 nearly all the entries are headed "Medical," "Gastro Intestinal" or "Psychiatric." There is a suggestion of "colitis," but on November 27, 1941, appears the statement, "There is no definite evidence of colitis," and on December 13, 1941, appears, "Everything continues in this case to be confusing." Early in 1942 the entries seem to indicate special attention to the heart. Cardiograms were taken, and on January 30 a diagnosis of coronary heart disease is suggested as "a likely one," possibly with an infarct. This is doubted in April. On June 10 there is an entry approving the idea of the patient getting a job with some physical labor, and it is stated that the diagnosis of myocardial infarct was never proved. There is no further entry until October 30, nearly a month after the date of the policy, when it appears that the patient had gained eight pounds, although he still complained of previous symptoms. On what appears to

have been his last visit to the hospital on November 6 the entry is made, "All studies have proved futile." So far as appears the hospital never reached a definite diagnosis. There are several references in the records to the patient looking better or well and working at his profession as a musician and later at the navy yard. A medical expert called by the defendant gave his opinion in answer to hypothetical questions that the insured had coronary occlusion and myocardial infarct, and that this would very definitely shorten his life.

Evidence introduced by the plaintiff in rebuttal tended to show that for about five years before his death the insured "seemed all right"; that he was nervous and complained about his bowels but about nothing else; that he had spoken about his going to the hospital and had said that "they had never found anything definite even with his bowels"; that he was active; that he worked a couple of nights a week while working days in the navy yard; that the Sunday before he died he sang and danced; that he went to work on a Wednesday and died that day "on the ramp near the entrance of the navy yard"; that his age was thirty-seven; that the agent of the defendant through whom the policy had been written was the brother of the insured; and that none of the handwriting upon the application was that of the insured except the signature.

The judge could not properly have ruled as matter of law that the defendant had sustained the burden of proving its affirmative defence. *Levie* v. *Metropolitan Life Ins. Co.* 163 Mass. 117. *Coughlin* v. *Metropolitan Life Ins. Co.* 189 Mass. 538. *Monjeau* v. *Metropolitan Life Ins. Co.* 208 Mass. 1, 7. *Collins* v. *Casualty Co.* 224 Mass. 327, 331–332. *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450. *Smardon* v. *Metropolitan Life Ins. Co.* 243 Mass. 599. *Foss* v. *Mutual Life Ins. Co.* 247 Mass. 10. *Schiller* v. *Metropolitan Life Ins. Co.* 295 Mass. 169, 176–178. *Giannelli* v. *Metropolitan Life Ins. Co.* 307 Mass. 18, 22–24. None of the evidence tending to show falsity of the representations relied upon came from sources by which the

plaintiff beneficiary was bound. The hospital record did not import absolute verity. There was no evidence that the insured had ever been an "inmate" of a hospital, construing the word inmate in its ordinary sense as meaning a person who lives or dwells in a particular place for an appreciable period of time. It does not appear that the insured ever spent a night at the hospital. There was no evidence that the insured had any "usual medical attendant" upon whom he depended as distinguished from such physicians as he came in contact with at different times in various departments of the hospital. The representation that the insured's health was good was made in response to a question in the application as to his "condition of health." Such a question as this, as well as the question whether the insured had ever had an "illness," is so indefinite that a wide allowance must be made for difference of opinion or judgment as to what constitutes good or bad health or an illness. These questions cannot "be construed as calling for more than an opinion, or a statement to the best of the applicant's knowledge and belief." *Metropolitan Life Ins. Co.* v. *Burno*, 309 Mass. 7, 9. They made issues for the jury. On October 1, 1942, so far as appears, the insured was working regularly, enjoying life, and gaining weight. He had not visited the hospital since the tenth of the preceding June. It does not appear that he had ever been bedridden or unable to work because of health. Even the representation that he had never had disease of the heart could not become the subject of a ruling as a matter of law. The question in the application relative to heart disease called only for the applicant's best knowledge and belief. *Metropolitan Life Ins. Co.* v. *Burno, supra.* The record of death was prima facie evidence only that on May 26, 1943, the insured "probably" had an "acute cardiac failure." G. L. (Ter. Ed.) c. 46, § 19, as last amended by St. 1945, c. 570, § 1. It had no authoritative quality as to his condition on October 1, 1942. The hospital had never made a final diagnosis of heart disease and on the previous tenth of June had expressly doubted that diagnosis. The insured may not have known or believed that he had a

heart disease and may have referred any symptoms he then felt to some gastro-intestinal disturbance which he did not consider an "illness."

But there was error in failing to grant in substance the defendant's third and fourth requests for rulings, that if the insured made false representations as to his bodily condition or health with actual intent to deceive or misrepresentations as to matters which increased the risk of loss there must be a verdict for the defendant. There was evidence already stated from which the jury could find that the insured did make misrepresentations with reference to some of the matters set forth in the answer; that he made them with intent to deceive; and that the matters misrepresented increased the risk of loss. These requests set forth the basic conditions under which according to the statute (G. L. [Ter. Ed] c. 175, § 186) the defendant was entitled to prevail. Nowhere in the charge were those conditions definitely and categorically stated to the jury. A lawyer familiar with the statute could discern that the judge had its terms in mind, and possibly an alert and shrewd juryman might infer what the conditions were, but the defendant was entitled to a clear and positive statement. This the charge failed to supply. The charge invited the attention of the jury to misrepresentations made with intent to deceive or as to matters which increased the risk of loss. But it was couched in general terms, with little attempt to apply them to the evidence and without precise direction as to what the jury should do if they found such misrepresentations. It closed with a general instruction to "bring in such verdict as you think is proper," which, taken in connection with the vagueness of what had been said before, might lead the jury to believe that they need give only such weight as they saw fit to misrepresentations, even though they were made with intent to deceive and even though they related to matters which increased the risk of loss.

The defendant's twenty-third and twenty-fourth requests relating to the prima facie quality of the record of death and to the meaning of "prima facie" should also have been

given.[1]  G. L. (Ter. Ed.) c. 46, § 19, as last amended by St. 1945, c. 570, § 1.  G. L. (Ter. Ed.) c. 46, § 1, as last amended by St. 1941, c. 51.  *Lydon* v. *Boston Elevated Railway*, 309 Mass. 205, 213–214.  *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564, 566.

Of the defendant's twenty-one remaining requests some have not been argued, some include matter beyond the scope of the answer, some have been covered by what has been said, and the others, in so far as they could have been given at all, would have required explanation or qualification. If they again become important they should be dealt with in the setting of the second trial.  We do not pass upon them now.

The exceptions to the charge have become immaterial.

*Exceptions sustained.*