HELEN LENNON *vs.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.

Worcester. December 3, 1958. — April 10, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Insurance*, Life insurance: representations, application.

Where it appeared that in an application for a life insurance policy the applicant, in answer to a question whether he had ever had a surgical operation, answered only that he had had a hernia operation some months previously, that about a week after the application he underwent a surgical operation to excise a cancerous growth in his larynx, that he did not inform the insurance company of the cancer operation, that the policy was issued shortly after that operation, and that the applicant died less than two years after it was issued, there was effective at the time the application was accepted and the policy issued a misrepresentation as to the cancer operation and the subject matter of the misrepresentation increased the risk of loss as a matter of law, so that the insurance company was entitled to avoid the policy, even though the applicant up to the time the policy was issued did not know that he had cancer.

CONTRACT. Writ in the Superior Court dated November 14, 1952.

The action was tried before *Meagher*, J.

*Charles W. Proctor*, for the defendant.

*Richard G. Crotty*, for the plaintiff.

WHITTEMORE, J. In an action of contract a widow seeks to recover as beneficiary the proceeds of a policy of insurance on the life of her husband.

The jury could have found facts as follows: In March, 1950, the insured noted the onset of hoarseness. At first it

occurred only with nervousness, but later it became constant. On June 26 of that year he was an outpatient at a hospital where a biopsy was performed upon him. The procedure was as follows: A laryngoscope, or hollow tube, was put down his throat to the left of the larynx, and in it a long handled pair of biopsy scissors was placed and a small bit of tissue was removed for laboratory analysis. There was no etherizing, but an anesthetic was applied locally. The entire operation took an hour to an hour and a half. The insured believed that it was "just to clear his throat." The throat is uncomfortable for two or three days after this procedure. The postoperative diagnosis was cancer of the larynx. On July 10, 1950, two weeks after the biopsy, the insured applied for the life insurance policy in question. Questions and answers in the application were as follows: "Have you ever had or been told that you had, or . . . been treated . . . for any of the following . . . Cancer . . . ?" Answer, "No." "Any surgical operation?" Answer, "Hernia operation 9 mos. ago. Re-examined Dr. Smith — 36 Pleasant St." "Have you, during the past five years, consulted any physician or other practitioner, or been confined to or treated in any hospital, sanatorium, dispensary, clinic or similar institution not [already] stated in answers to [other] questions . . . ?" Answer, "No." One week after applying for the policy, on July 17, he was admitted to the hospital where, on July 19, an operation was performed upon him to excise the cancerous growth in his larynx. The policy was issued on July 27. It does not appear when it was delivered. He was discharged from the hospital on August 1, "markedly improved." On May 15, 1951, he was readmitted to the hospital, where an exploratory operation for cancer of the pancreas was performed upon him; "they opened him up and identified the difficulty and then sewed him up again." He was admitted to the hospital for the last time on March 23, 1952, and he died of cancer of the pancreas on April 21, 1952. There is no known relationship or communication physically between cancer of the larynx and cancer of the pancreas. There was no evidence that the cancer of the

larynx was the cause of death. There was testimony, however, that it is an observation statistically that persons who have once had a cancer have a tendency to have a second cancer. The plaintiff, the beneficiary, did not contend that the insured did not have a cancer in July; she testified that she knew of the cancer around the middle or toward the end of July, but the insured did not know for what he was operated on. He thought he was being treated for hoarseness. At the close of the evidence the defendant moved for a directed verdict, from the denial of which it duly excepted. There was a verdict for the plaintiff.

General Laws c. 175, § 186, provides that "[n]o oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured . . . shall . . . defeat or avoid the policy . . . unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

A misrepresentation of the absence of cancer increases the risk as a matter of law. *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 453. *Smardon* v. *Metropolitan Life Ins. Co.* 243 Mass. 599. *Schiller* v. *Metropolitan Life Ins. Co.* 295 Mass. 169, 177–178. *Metropolitan Life Ins. Co.* v. *Burno*, 309 Mass. 7, 11. However, it was held in the *Burno* case that a question, asking the applicant if he has ever had a disease of certain organs, calls only for an answer to the best of the applicant's knowledge and belief so that a negative answer in good faith by one who had no knowledge of the disease (cancer) would not be a basis for avoiding the policy. But in that case, with citations, it was said (p. 10), "Innocent misrepresentation, in insurance policies as in other instruments, may be constructive fraud where the applicant stated as a fact something material to the risk which was susceptible of knowledge, and it turns out to be untrue, although he believed it to be true." In the case of *Rainger* v. *Boston Mut. Life Assn.* 167 Mass. 109, cited in the *Burno* case, there was a misrepresentation as to the use of intoxicating liquors and it was said (p. 111) that it was immaterial

whether the insured actually or knowingly intended to deceive the insurer, for the risk was increased and as a matter of law the policy was avoided. In the *McDonough* case, *supra,* p. 453, we said: "If the opinions . . . [of cancer] were accepted as true, manifestly the risk of loss was increased materially by misrepresentations made by the insured in his application [that he had never had cancer, was in good health, and had not been treated in a hospital]. . . . But it does not appear that the trial proceeded upon the footing that the insured actually had that disease at the time the policy was issued. . . . Whether he did or not . . . was a question of fact, and ought to have been submitted to the jury." There was no such issue of fact here. In *Gabbett* v. *Connecticut Gen. Life Ins. Co.* 303 Mass. 433, we held, as to an operation for a bunion intervening between the date of application and the effective date of an accident policy, that as the jury had found that the operation increased the risk of loss, the insured, a registered nurse, was under an obligation to disclose it and her failure to do so avoided the policy. In the application in that case the insured had answered that she had not been advised to have a surgical operation and had not had such. The jury could have found that at that time she had in fact been advised to have the operation and that some years before she had had an operation for removal of a bunion. The jury found, specially, that the application contained a misrepresentation which was not made with intent to deceive and which did not increase the risk of loss, but that the subsequent operation did increase the risk of loss.

We think the subsequent operation in this case, for cancer, increased the risk as a matter of law. The *Gabbett* case establishes that there was an obligation on the insured to disclose it, whether or not he knew that it was for cancer. The rule that cancer increases the risk as a matter of law has the same effect on the result here as the special jury verdict had in the *Gabbett* case. In the *Burno* case there had been an untrue answer in the application in the failure to disclose when asked "what . . . physicians . . . have you

consulted . . ." that he had shortly before consulted a physician for "belching gas, stomach ache, heartburn and constipation." The judge found that this answer was not with intent to deceive and the matter misrepresented did not increase the risk of loss. Here an effective misrepresentation operative when the application was accepted and the policy issued was in respect of an operation for cancer on July 19. At least on and after that date, there was no doubt that the insured had knowledge of the fact of a serious operation. We do not think that the insured's lack of knowledge that he had cancer discharged him from the obligation to report the operation to the insurance company. We can see no basis for an assumption by the insured, in good faith, that the insurer would not deem such an operation material, whatever the disease. Compare *Rappe* v. *Metropolitan Life Ins. Co.* 322 Mass. 438.

This is the opinion of a majority of the court.

*Exceptions sustained.*
*Judgment for the defendant.*