GERTRUDE FLANAGAN *vs.* JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY.

Suffolk.    May 5, 1965. — June 23, 1965.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Insurance,* Life insurance: representations, application. *Practice, Civil,* New trial. *Evidence,* Life insurance application, Evidence binding a party, Declaration of deceased person.

Following a verdict for the plaintiff in an action on a life insurance policy, no abuse of discretion in allowing a motion by the defendant for a new trial appeared on a record affording basis for determinations by the trial judge that prospective evidence from a doctor in a foreign country as to medical treatment of the insured there prior to the issuance of the policy would be relevant to the ground of defence, admissible, and likely to affect the result in the case, and that such evidence had not been available to the defendant for use at the first trial by exercise of reasonable diligence. [408]

In an action on a life insurance policy by the insured's widow as bene-
ficiary, testimony by her that she knew that the insured had received
X-ray treatments was binding on her in the absence of evidence more
favorable to her, and justified a ruling as matter of law that a state-
ment by the insured in his application for the policy, that he had never
had such treatments, was false; the plaintiff was not entitled to have
such statement in the application considered as itself evidence more
favorable to her than her own testimony where the application was
admitted in evidence as part of the policy and not as a declaration of a
deceased person under G. L. c. 233, § 65.   [408–409]
A false statement in an application for life insurance, that the applicant
had not received X-ray treatments, increased the risk of loss where in
all likelihood a truthful statement and consequent investigation would
have revealed to the insurer that the applicant was suffering from
Hodgkin's disease of which he later died.   [409]

CONTRACT. Writ in the Superior Court dated Janu-
ary 13, 1960.

Following a verdict for the plaintiff at a trial before
*Fairhurst,* J., the judge allowed a motion by the defendant
for a new trial.   There was a verdict for the defendant at
the second trial before *Murray,* J.   The plaintiff alleged
exceptions.

*Gael Mahony* for the plaintiff.

*Jeremiah W. Mahoney* (*Daniel J. Johnedis* with him) for
the defendant.

KIRK, J.   The case is before us on the plaintiff's two
bills of exceptions arising out of an action of contract on a
policy of life insurance issued by the defendant to William
J. Flanagan (the insured) whose widow is the beneficiary
of the policy and the plaintiff in the action.   The first bill
of exceptions relates to the order of the judge at the first
trial setting aside the verdict for the plaintiff, and granting
a new trial on the ground that "justice cannot be done be-
tween the parties without hearing the evidence referred to
in the motion [for a new trial] and in the affidavits sub-
mitted in behalf of the defendant."   The second bill of ex-
ceptions relates to the charge to the jury given by another
judge who presided at the second trial.

The litigation centered on the factual issue of whether
the insured in his application for the policy made misrepre-
sentations with actual intent to deceive or which increased

the risk of loss. Certain facts are not disputed. The plaintiff and the insured had lived in England from 1948 to March 8, 1957, when they left for the United States. They arrived here on March 13, 1957. On April 27, 1957, the insured signed an application for a life insurance policy with the defendant in which he stated the following: he was then in good health; he never had or been told that he had, or consulted or been treated by a physician or other practitioner for cancer, other tumors or any surgical operations; he had never had any X-rays or blood examinations; and during the past five years he had not consulted or been treated or examined by any physician or practitioner or attended or been treated or confined in any hospital, clinic, sanitorium or similar institution. On May 15, 1957, the defendant issued the policy to the insured. On December 18, 1958, the insured died of Hodgkin's disease.

We deal first with the exception to the allowance of the motion for a new trial on the ground of newly discovered evidence following the verdict at the first trial. Much of the evidence at the trial, which commenced on February 9, 1961, concerned the insured's physical condition and medical treatment while he was in England. The motion for a new trial was primarily based on an affidavit by Dr. T. K. Morgan, a cancer specialist, of Southampton, England. The affidavit stated, in substance, that the insured came to him on August 12, 1954, and told of having had lumps on his neck for sixteen weeks. Microscopic examination showed that the insured had Hodgkin's disease. Deep X-ray treatments, thirty-six in all, were given to the insured's enlarged glands from August 23, 1954, to October 8, 1954. The enlargements disappeared. The insured was seen monthly thereafter over a period of about six months. An enlarged gland showed in May, 1955, whereupon a course of X-ray therapy of eleven days was given. The enlargement again disappeared. In October, 1956, the insured appeared to be symptom free. On February 27, 1957 (nine days before the insured's departure for the United States), Dr. Morgan saw the insured who was ac-

companied by his wife.  No recurrence of Hodgkin's disease was observed except for a slight enlargement of the left hilum.  He told the insured that there was no reason why he should not go to the United States of America, but warned him that he should place himself under the supervision of a doctor there.  He was sure that he did not tell the insured, "there is absolutely nothing wrong with you." He was also sure that he never told the insured that he had Hodgkin's disease, but did tell him that he had a type of glandular disease which would necessitate periodic medical checkups.  He stated that he never informs "any patient that he has a short expectation of life unless under some extreme extenuating circumstances."

There was no error in allowing the defendant's motion. We have often said that the disposition of a motion for a new trial on the ground of newly discovered evidence rests largely in the sound discretion of the trial judge.  The governing principles were most recently stated with numerous citations in *Spiller* v. *Metropolitan Transit Authy.* 348 Mass. 576, 579–580, and need not be repeated.  We find nothing in the record which compels the conclusion, as argued by the plaintiff, that there was an abuse of discretion. On the contrary the record shows substantial grounds for a determination by the judge that the evidence which would be forthcoming from Dr. Morgan was relevant, admissible and likely to affect the result of the trial, and for a further finding that the proffered evidence was not available to the defendant for introduction at the first trial by the exercise of reasonable diligence.  *DeLuca* v. *Boston Elev. Ry.* 312 Mass. 495, 497.

We turn to the alleged errors in the judge's charge to the jury at the second trial.  The evidence at the two trials for all practical purposes was the same with the exception that a deposition by Dr. Morgan was in evidence at the second trial.  The plaintiff testified that she knew that her husband had received X-ray treatments.  The judge charged the jury, subject to the plaintiff's exception, that the plaintiff was bound by her testimony in this respect, and that

the insured's denial in his application that he had ever had X-rays was false as matter of law. It is argued by the plaintiff that this instruction was error because she was entitled to the benefit of any other evidence in the case which was more favorable to her on this issue. She contends specifically that the insured's statement in his application for the policy that he never received X-rays was more favorable evidence and should be considered by the jury. The judge was right. The application, under G. L. c. 175, § 131, was part of the insurance contract with the defendant and was necessarily admissible on that basis. *Shurdut* v. *John Hancock Mut. Life Ins. Co.* 320 Mass. 728, 731. It did not thereby acquire, however, the evidential value attributable to a declaration of a deceased person under G. L. c. 233, § 65. There is no suggestion in the record that the application was offered or received under the latter statute as evidence of the truth of the matters stated in it. The judge's instruction to the jury points definitely to the contrary. 320 Mass. 728, 730–731. There being no evidence more favorable to the plaintiff, she is bound by her own testimony. *Murphy* v. *Smith,* 307 Mass. 64, 68. Cf. *Reynolds* v. *Sullivan,* 330 Mass. 549, 552–553. The judge correctly instructed the jury that a false representation as matter of law had been made to the defendant in the application. *Rappe* v. *Metropolitan Life Ins. Co.* 322 Mass. 438, 440–441, and cases cited.

The false statement that the insured had not received X-ray treatments as matter of law "deprived the insurer of the opportunity to undertake further investigation which, in all likelihood, would have revealed the diagnosis of Hodgkin's disease," an illness which, as matter of law, increases the risk of loss. *Pahigian* v. *Manufacturers' Life Ins. Co. ante,* 78, 86–87.

*Exceptions overruled.*