CHARLES L. AYERS & another, administrators, *vs.*
MASSACHUSETTS BLUE CROSS, INC. & another.

Essex.    April 16, 1976. — August 11, 1976.

Present: HALE, C.J., KEVILLE, GOODMAN, GRANT, & ARMSTRONG, JJ.

*Insurance,* Health insurance, Misrepresentation, Application.

An insured's failure to disclose in response to certain questions in an
   application for membership in a medical insurance plan that she
   had been suffering from urinary problems and that she had been
   treated for cystitis constituted a misrepresentation of her medical
   history which, as matter of law, increased the insurer's risk of loss
   and justified the insurer in cancelling her membership. [535-538]
   GOODMAN, J., concurring.

BILL IN EQUITY filed in the Superior Court on February
9, 1973.
   The suit was heard by *Adams, J.*
   *Reginald H. Howe* for the defendants.
   *Charles L. Ayers* for the plaintiffs.

ARMSTRONG, J.    This complaint was brought by the ad-
ministrators of the estate of one Marion H. Marshall (the
decedent) against Massachusetts Blue Cross, Inc. (Blue
Cross), and Massachusetts Blue Shield, Inc. (Blue
Shield), for a declaration that her estate is entitled to re-
ceive benefits on account of various medical services ren-
dered to her between April 1, 1971, the effective date of her
"subscriber's certificates," and August 1, 1972, the date of
her death.[1] The defendants contend that their contracts
with the decedent were validly terminated, retroactive to
their effective date, due to misrepresentations made by the

---

[1] In the Superior Court the plaintiffs also sought reimbursement for
certain prescription drugs purchased before April 1, 1971, but that
claim is no longer pressed.

decedent in her application.[2] By counterclaim they seek a declaration that they are entitled to reimbursement from the estate of $333.89, representing the difference between a claim which they paid before termination and the aggregate of the premiums paid by the decedent. The case was tried to a judge, who made detailed findings and concluded that the statements (and omissions) on the decedent's application were not misrepresentations and that Blue Cross and Blue Shield are obligated to pay the benefits claimed.

We describe the pertinent evidence, most of which is included in the judge's findings, and none of which is in dispute. In January, 1971, as a result of feeling burning sensations when she urinated and finding a blood clot in her urine, the decedent, then 62 years old, saw a Dr. Greene on three occasions — January 3, 8 and 14. Dr. Greene diagnosed the problem as cystitis and prescribed penicillin. The symptoms seemed to improve, and the decedent, at some time between her visits to Dr. Greene and March 2, 1971, was able to produce a clear urine sample. On February 23, 1971, she saw a Dr. Dorrie for bronchitis.

On March 2, she filled out an application for Blue Cross and Blue Shield coverage. In the portion of the application which related to her medical history there was a question (number 4) which required her to answer "yes" or "no" with respect to specific ailments. She answered that she had had bronchitis, but that she had not had, among other things, "other respiratory infections," "heart trouble," "urinary trouble," "bladder trouble," or "cysts, tumors, cancer, [or] other growths." To the next question (number 5), which asked, "Have you ... had any other ailments, injuries, or symptoms of diseases?," she answered, "No." To question number 6, which asked, "Have you ... consulted a physician in the last five years?," she answered,

---

[2] In the Superior Court the defendants also defended against certain of the plaintiffs' claims on the ground that they related to treatments of conditions which predated the certificates and were thus excluded from coverage by the provisions of the certificates. That contention is not argued in this court.

"Yes." In response to question number 7, which asked, among other things, for the names and addresses of the physicians connected with any affirmative answers to questions number 4, 5 and 6, she named only Dr. Dorrie and did not divulge the name of Dr. Greene. The application was approved on April 1, 1971.

On April 13, 1971, the decedent was admitted to a hospital in Florida with a diagnosis of "bladder tumor," the symptoms of which, according to the medical history she gave at that time, had begun in early January, 1971, with dysuria and the urinary clot already mentioned.[3] In addition she indicated that she had "something strange in my heart . . ." and had been taking digitoxin, a form of digitalis, since age 55. She also stated that she had a "slight case of emphysema — gave up cigarettes 7 years ago."[4] A doctor at that hospital performed a cystoscopy and a transurethral resection of the tumor. On April 23, 1971, she was admitted to the Massachusetts General Hospital, was diagnosed as having extensive bleeding cancer of the bladder, and underwent a radical cystectomy. On May 27, 1971, she was admitted to the Addison Gilbert Hospital in Gloucester for septicemia. On May 24, 1972, she was again admitted to the Addison Gilbert Hospital, where she underwent surgery for bowel obstructions in June and again in July. She remained at the Addison Gilbert Hospital un-

---

[3] The admission history sheet stated "Present illness: This began on January 3, 1971 when she noticed 'a little tiny clot in a glass jar'. She was prompted to look at this urine in a glass jar at that time because she had had some slight burning dysuria for the 3 days prior to this, she was given an antibiotic and stated 'not wholly cleared up' but she had some improvement of her symptoms. Intermittently since that time, about every 3 weeks, she has had a little bit of burning associated with very small amounts of blood or blood-streaked tissue."

[4] Other evidence of her prior medical history (and her knowledge thereof) was supplied in the testimony of Dr. Dorrie, who had given her a physical examination on March 24, 1971. He testified that she had told him that she had had dysuria in January, that she "had a history of having irregular heart beat for the previous six years, and that she had been started on digitoxin by another local physician for that illness"; that he had given her an electrocardiogram which showed "evidence of a . . . possible old myocardial infarction"; and that he had found she had "minimal" emphysema.

til her death on August 1. A postmortem examination showed no evidence of recurrent cancer; and no contention is made that her final illness was related in any way to the cancer of the bladder. The major components of the plaintiffs' claim are the four hospitalizations.

When claims were made in 1971 relating to the hospitalizations at the Florida hospital and at the Massachusetts General Hospital, the defendants refused to pay benefits on the ground that "these admissions were for treatment of a preexisting condition."[5] Initially they refused benefits for the first hospitalization at the Addison Gilbert Hospital for the same reason, and the additional reason that the septicemia and an accompanying urinary tract infection were "not covered during the first eight months of membership"; that position was reversed on December 20, 1971, and the claim was paid. On March 6, 1972, however, the defendants cancelled the decedent's membership on the ground of misrepresentation in her application.[6] Notice was given that the premiums paid in would be applied against the benefits paid out on account of the first hospitalization at the Addison Gilbert Hospital, and demand was made for reimbursement of the balance.

The judge (as we interpret his finding numbered forty) found that the decedent had cancer on the bladder on April 1, 1971, when her application for Blue Cross-Blue Shield coverage was accepted. But although he found, in accordance with Dr. Dorrie's testimony, that the decedent's urinary difficulties in January were symptomatic not only of cystitis but also of cancer, he concluded that the evidence was insufficient to enable him to find that she had cancer of the bladder on March 2, 1971, when she filed her application and he found instead that the "problem" which had been diagnosed as cystitis had "cleared up"

---

[5] See footnote 2.

[6] "It has come to our attention that you have experienced gross hematuria and passed clots in the first week of January 1971, which was treated medically. This condition existed prior to the effective date of your membership. These facts would have seriously altered our decision as respects to your application, had it been known to us."

prior to that date. The judge also found that the decedent had no knowledge until she was admitted to the Florida hospital that she had cancer of the bladder.

There was testimony, apparently accepted by the judge, to the effect that, if the decedent had revealed her experience with cystitis in her application, the defendants, following a standard procedure, would have attached to the certificates of coverage a "supplemental agreement" excluding from coverage "conditions of the urinary tract and any complications arising therefrom including those due to surgical intervention"; and had they known of her heart history, they would have charged a higher premium and attached a "supplemental agreement" excluding from coverage "acute infarction of the brain or myocardium and acute or chronic failure of the myocardium and any complications arising therefrom."

The judge's conclusion that the decedent had not misrepresented her medical history focused on certain broadly stated categories of complaints mentioned in the fourth question on the application, such as "stomach or bowel conditions," and "eye, ear, nasal conditions," which on a broad reading would "require what the court concludes to be unnecessary 'yes' answers." The court concluded that the fourth question was, in essence, ambiguous, rather than simply very sweeping, and that it should be read to require an affirmative answer to a listed ailment only for "a continuous recurring problem that affects the well-being of the applicant." We do not think that this view can be reconciled with the language of the question. The words, "Have you ... ever had any of the following ... [ailments]" are plainly not limited to continuing or recurring ailments. If, as we need not decide, certain listed ailments are so broadly phrased as to be ambiguous in their application to various examples cited by the judge ("pink eye," earache, a simple nosebleed, occasional constipation or diarrhea), cf. *Rappe* v. *Metropolitan Life Ins. Co.* 320 Mass. 376, 380 (1946); *Aetna Life Ins. Co.* v. *Hub Hosiery Mills,* 170 F. 2d 547, 550 (1st Cir. 1948), it does not follow that they are ambiguous in their application to more seri-

ous disorders. The questions which were held to be unambiguous in *Doulames* v. *Prudential Ins. Co.* 1 Mass. App. Ct. 871 (1974), were no more so than the subparts of question four on this application. Certainly the decedent's discovery of blood in her urine in January, 1971, even assuming (contrary to the history she gave at the Florida hospital; see fn. 3) that it did not persist through February and March and that it had been correctly diagnosed as cystitis, was a plain matter of fact which required an affirmative answer to at least one portion of question four or question five. See *Metropolitan Life Ins. Co.* v. *Burno,* 309 Mass. 7, 10 (1941). Moreover, question seven, which required the decedent to disclose her visit to and treatment by Dr. Greene on account of that urinary condition, cannot be regarded as ambiguous, nor can her incomplete response to it be regarded as other than a misrepresentation. *Rappe* v. *Metropolitan Life Ins. Co.* 322 Mass. 438, 440-441 (1948). *Davidson* v. *Massachusetts Cas. Ins. Co.* 325 Mass. 115, 120-121 (1949).

We thus come to the question whether the misrepresentations made by the decedent in her application justified the defendants' cancellation of her membership. In doing so, we assume, without deciding, that Blue Cross and Blue Shield policies are subject to the laws governing insurance.[7] Under G. L. c. 175, § 186, a misrepresentation in an application for an insurance policy does not enable the insurer to avoid the policy unless the misrepresentation was made with actual intent to deceive, or unless the misrepresentation "related to a matter the truth as to which, as compared with the representation, increased the risk of loss." *Davidson* v. *Massachusetts Cas. Ins. Co., supra,* at 119. *Sullivan* v. *John Hancock Mut. Life Ins. Co.* 342 Mass.

---

[7] The defendants contend that "subscribers' contracts under G. L. c. 176A and c. 176B are sui generis and are regulated solely by the provisions of those chapters." General Laws c. 176B, § 14, specifically exempts Blue Shield from the general application of the insurance laws. General Laws c. 176A, § 1, as originally enacted (St. 1936, c. 409, § 1), so exempted Blue Cross, but the recodification of c. 176A by St. 1950, c. 766, omitted the sentence. See also G. L. c. 176B, § 5.

649, 658 (1961). The judge did not make findings or rulings explicitly directed to either of those questions because of his conclusion that there was no misrepresentation at all. On the basis of the findings which the judge did make, however, we are of the opinion that the decedent's misrepresentations relative to her urinary difficulties increased the defendant's risk of loss as matter of law.

Statements made in an application for insurance are in the nature of continuing representations and speak from the time the application is accepted or the policy is issued. *Gabbett* v. *Connecticut Gen. Life Ins. Co.* 303 Mass. 433, 435 (1939). *Lennon* v. *John Hancock Mut. Life Ins. Co.* 339 Mass. 37, 41 (1959). Whether misstatements in such an application increase the insurer's risk of loss ordinarily presents a question of fact. *Schiller* v. *Metropolitan Life Ins. Co.* 295 Mass. 169, 177-178 (1936). *Davidson* v. *Massachusetts Cas. Ins. Co., supra,* at 119. *Pahigian* v. *Manufacturers' Life Ins. Co.* 349 Mass. 78, 85 (1965). Misstatements have that effect as matter of law, however, when they conceal the presence of certain diseases, including cancer. *Lennon* v. *John Hancock Mut. Life Ins. Co.* 339 Mass. at 39, and cases cited. *Pahigian* v. *Manufacturers' Life Ins. Co., supra,* at 85.

In this case it is established that the decedent had cancer of the bladder at the time her application was accepted and her subscriber's certificates took effect. Contrast *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 453-454 (1917). The judge's finding to that effect was based on Dr. Dorrie's testimony about the urinary problems which the decedent had been suffering and for which she had previously been treated by Dr. Greene — all of which the decedent concealed from the defendants by her answers to the fourth, fifth and seventh questions. The judge found, in accordance with Dr. Dorrie's testimony, that the plaintiff's urinary problems, while symptomatic of cystitis, were equally symptomatic of cancer of the bladder. The decedent's failure to reveal those symptoms meant that the "insurer[s] . . . failed to receive the candid answers necessary for . . . [them] to evaluate the risk involved." *Pa-*

*higian* v. *Manufacturers' Life Ins. Co., supra,* at 86-87. It meant that they were deprived of the medical history which, even assuming they would have accepted Dr. Greene's diagnosis of cystitis, would have led them as a matter of standard operating procedure to attach the supplemental clause which would have excluded coverage of the decedent's first two hospitalizations after the policy took effect.

We recognize that the statement in the decedent's application that she did not have a tumor or cancer, although untrue as of the date her application was accepted, was not a misrepresentation, because, for the reasons stated in *Metropolitan Life Ins. Co.* v. *Burno,* 309 Mass. at 8-9, the question called only for a statement to the best of the applicant's knowledge and belief, and the judge found that she did not know she had a tumor until April 13, 1971. But the application's questions delved deeper, requiring the applicant to divulge any history of certain symptoms, or ailments, and to furnish the defendants with the name of the doctor, if any, who treated them. The fact that the decedent did not know she had cancer did not relieve her of the obligation of furnishing the defendants with truthful answers to those questions, so as to enable the defendants to make their own evaluation of the risks involved and to undertake such further investigation, or to impose such policy exclusions, as their experience indicated to them were warranted. On the facts found by the judge the decedent's failure to have done so increased the defendants' risk as matter of law. *Pahigian* v. *Manufacturers' Life Ins. Co.* 349 Mass. at 86-87. *Flanagan* v. *John Hancock Mut. Life Ins. Co.* 349 Mass. 405, 409 (1965). See also *Lennon* v. *John Hancock Mut. Life Ins. Co.* 339 Mass. at 40.

The facts found by the judge also warranted an inference that the decedent's misrepresentations were made with actual intent to deceive (*Doulames* v. *Prudential Ins. Co.* 1 Mass. App. Ct. 871 [1974]), and may have required such an inference (compare *New York Life Ins. Co.* v. *Webber,* 60 F. 2d 22, 23-24 [1st Cir.], cert. den. 287 U. S. 662 [1932]). But we need not decide that question, as in-

tent to deceive need not be shown where the defendants have established that the misrepresentations increased the risk of loss. *Rappe* v. *Metropolitan Life Ins. Co.* 322 Mass. at 440. *Shaw* v. *Commercial Ins. Co.* 359 Mass. 601, 607 (1971). *Doulames* v. *Prudential Ins. Co., supra,* at 872.

The judgment is reversed. A new judgment is to enter declaring that (a) the plaintiffs are not entitled to benefits under the policies and (b) the defendants are entitled to recover $333.89, representing the difference between the benefits previously paid by them on account of the policies and the aggregate of the premiums paid by the decedent and retained by the defendants.

*So ordered.*

This case was initially heard by a panel composed of Justices Keville, Goodman, and Armstrong, and was thereafter submitted on the record and briefs to the remaining Justices of this court.

GOODMAN, J. (concurring in result).   As I read the record as presented to us, it cannot be said that the decedent's misstatements "in all likelihood" prevented the defendants from discovering the cancer. Contrast *Pahigian* v. *Manufacturers' Life Ins. Co.* 349 Mass. 78, 86 (1965); *Flanagan* v. *John Hancock Mutual Life Ins. Co.* 349 Mass. 405, 409 (1965). But it is clear from the record (*Zuckerman* v. *Blakeley*, 3 Mass. App. Ct. 685, 686-687 [1975]; see *King* v. *Commissioner of Internal Rev.*, 458 F. 2d 245, 249 [6th Cir. 1972]) that the misstatements increased the risk of loss from "conditions of the urinary tract and any complications arising therefrom . . . ," which the defendants would have excluded from coverage had the decedent not misrepresented her history of treatment. Because the decedent's cancer of the bladder was subsumed in the exclusion which the defendants would have required, they are absolved from liability for that condition — without the assimilation of this case to the *Pahigian* and *Flanagan* cases. The majority appears to me to extend unduly the application of those cases.