**NORTHWESTERN MUTUAL
LIFE INS. CO., Plaintiff,**

v.

**Peter P. IANNACCHINO, Defendant.**

**Civil Action No. 95–40135–NMG.**

United States District Court,
D. Massachusetts.

Jan. 9, 1997.

Mark P. Harty, Steven J. Bolotin, Boston, MA, for plaintiff.

Joseph S. Samra, Jr., Worcester, MA, for defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court is 1) a motion of Northwestern Mutual Life Insurance Company ("NML") for summary judgment filed on September 30, 1996 and 2) NML's motion to strike defendant's affidavit, disregard portions of defendant's opposition to plaintiff's summary judgment motion and for the award of costs and fees. This is a declaratory judgment action initiated in 1995 by NML seeking a declaration that NML has no obligations to defendant, Peter P. Iannacchino ("Iannacchino") under Disability Insurance Policy No. D951297 issued by NML on July 19, 1993 (the "Policy"). NML alleges that the undisputed facts show both that Iannacchino made material misrepresentations in his application for insurance ("the Application") which increased NML's risk of loss as a matter of law and that Iannacchino's claim is excluded from coverage under the terms of the Policy. NML claims it is, therefore, entitled to a determination that the policy is void *ab initio* and/or that it may deny Iannacchino's claim.

## I. *Background*

On or about May 1, 1992, as part of an application for life insurance with NML, Iannacchino underwent a medical examination conducted by a company-approved physician, Dr. Ted Morgan. In conjunction with that physical, Iannacchino completed and signed a questionnaire setting forth his medical history ("the Medical Declaration Form") wherein he disclosed that he had undergone a hip replacement due to a degenerative condition. Thereafter, Dr. Morgan conducted an examination of Iannacchino during the course of which the doctor identified hearing loss difficulties suffered by Iannacchino. Reports from a Dr. Mykel, who had previously treated Iannacchino, noted a history of chronic lower back pain and osteoarthritic degeneration of the spine.

Based upon the representations contained in the Medical Declaration Form and the reports of Dr. Morgan and Dr. Mykel, NML agreed to issue a disability policy to Iannacchino subject to three exclusion riders based

upon pre-existing conditions: lumbar or sacral vertebrae, otosclerosis (hearing loss) and diseases or disorders associated with the right hip. Iannacchino, however, refused to accept the policy with the exclusion riders and the coverage never took effect.

In February, 1993, Iannacchino advised an insurance agent, Michael Papaz, that he wanted to obtain the disability insurance previously applied for. Accordingly, Papaz inquired of NML as to the procedure necessary to reinstate Iannacchino's application. On May 3, 1993, NML wrote to Iannacchino advising him that, due to the lapse of time since his examination by Dr. Morgan, NML would require him to complete a non-medical examination supplement to his application providing an updated medical history before NML could consider his request to reinstate it. On May 15, 1993, with the assistance of the Agent, Michael Papaz, Iannacchino completed the non-medical examination underwriting questions and signed the form which then became part of the subject Application for disability insurance with NML.

Based upon the information contained in the Application (including the non-medical examination form), NML advised Iannacchino that it had agreed to issue a policy to him containing three exclusion riders for the pre-existing conditions identified by Iannacchino ("the Policy"). Thereafter, NML sent a complete copy of the Policy, including the Application, declarations and exclusion riders, to Iannacchino for delivery, verification and signature on the riders. The effective date of the Policy ("Date of Issue") was of July 19, 1993 even though the "Policy Date" for anniversary purposes was March 16, 1993.

On April 2, 1995, Iannacchino made a claim under the Policy for disability due to depression from which he had allegedly been suffering since February 17, 1994. Because Iannacchino's claim arose within two years of the Date of Issue, NML undertook a routine investigation of his medical condition and history as set forth in his Application. As part of its investigation, NML obtained the medical records of various physicians and counselors who had treated Iannacchino.

NML concluded that the following responses made by Iannacchino in the non-medical examination form were inaccurate for the following reasons:

Question 32:

"Are you using any medications or drugs?"

Answer: "No".

Reason: NML claims that on April 20, 1993, Dr. Kenneth Stevens prescribed Prozac for Iannacchino for depression and that Iannacchino has admitted that he was taking Prozac at the time he completed the Application but made no reference to it in his answer to Question 32.

Question 33B:

"In the last 10 years, have you had or have you been medically treated for ... fainting spells, seizures or convulsions, recurrent headaches, paralysis or stroke, mental, nervous or psychiatric disorder?"

Answer: "No".

Reason: NML contends that despite Iannacchino's representations, his medical records indicate a long history of, and treatment for, depression. During his initial visit with Dr. Stevens, in 1982, he indicated that he suffered from sleeplessness and occasional bouts of depression. At that time, Iannacchino was prescribed Dalmane to help him sleep. Similarly, in 1985, Dr. Stevens reported that he discussed the role of stress with Iannacchino, and that as a result Iannacchino had been receiving treatment from Dr. David Weiss, a psychologist. In April, 1993, Iannacchino admitted to Dr. Stevens that he had been feeling a sense of hopelessness as well as an inability to make decisions which had rendered him "completely ineffective." [1]

---

1. Specifically, on April 20, 1993, Dr. Stevens recorded the following in his office notes after examining Iannacchino:

The pt. comes to the office today in F/U to phone conversation of 4/19/93. He admits that for the last month or so he has been feeling a sense of hopelessness. He feels he cannot function. He's been depressed, crying easily.

He has not been suicidal.... Peter at this point doesn't feel he can make decisions and is totally ineffective. After some discussion today it is clear that the patient is significantly depressed. I started him on Prozac starting this morning, 20 mgs. q.a.m. and he will continue w/ this.

In addition, the records indicate that Iannacchino had been regularly seeing a psychologist for over a decade prior to the completion of the Application. Dr. David Weiss had been treating Iannacchino from March, 1982 through September 21, 1993 for stress and depression. Despite that treatment history, Iannacchino did not mention in the Application his treatment and counselling for stress and depression by either Dr. Stevens or Dr. Weiss.[2]

## II. *Analysis & Conclusions*

### A. *Iannacchino's Failure to Disclose the Information at Issue Constitutes Misrepresentations in the Application.*

NML contends that the information withheld from the Application, most notably the prior consultations, diagnosis and prescription treatment for depression, was material to its determination of whether to underwrite the Policy, and the terms and conditions of such a policy if underwritten. Accordingly, NML asserts that those misrepresentations increased its risk of loss as a matter of law.

Under Massachusetts law, in order to void or rescind a policy of insurance or deny a claim based upon misrepresentations in an application for insurance, the insurer must demonstrate that the misrepresentations were made with intent to deceive or that they increased the risk of loss to the insurer. M.G.L. c. 175, § 186. *See Pahigian v. Manufacturers Life Ins. Co.*, 349 Mass. 78, 206 N.E.2d 660 (1965). An insurer need not demonstrate that it relied on misrepresentations because under Massachusetts law "reliance" is not a prerequisite for proof of invalidation of an insurance policy and/or denial of a claim. *Shapiro v. American Home Assurance Co.*, 584 F.Supp. 1245, 1250 (D.Mass.1984). Rather, an insurer may void or rescind its policy and/or deny a claim if the insured makes an innocent misrepresentation of a material fact, and the disclosure of the truth would have influenced the judgment of the underwriter in making the insurance contract, in estimating the degree and character of the risk or in fixing the rate of premium. *Employers' Liability Assurance, Ltd. v. Vella*, 366 Mass. 651, 655, 321 N.E.2d 910 (1975).

In the case at bar, Iannacchino has admitted he withheld information responsive to questions contained in the Application, including:

1. reference to long term treatment by a psychologist, Dr. Weiss, and by a physician, Dr. Stevens;

2. diagnosis of depression one month prior to signing the Application; and

3. a prescription for the anti-depressant drug, Prozac, which Iannacchino was taking at the time he signed the Application.

NML argues that such misrepresentations precluded it from making proper inquiry into the defendant's medical condition, from identifying the defendant's depression and from considering it in their underwriting decision.

The Application questions seeking information about particular medical problems, symptoms, prescribed medications, consultations and treatments undergone, etc. were unambiguous, and required only statements of fact in response. *Ayers v. Massachusetts Blue Cross, Inc.*, 4 Mass.App.Ct. 530, 535, 352 N.E.2d 218 (1976). As in *Ayers*, Iannacchino failed to identify properly facts known by him at the time he signed the Application, such as symptoms experienced, medical practitioners consulted and treatment received. Iannacchino admitted that he was asked questions by his insurance agent who recorded the answers. He then reviewed the completed Application, acknowledged the truthfulness of the information contained therein and signed the Application. His failures to disclose requested information cannot be regarded as anything other than misrepresentations. *Id.*, citing *Rappe v. Metropolitan Life Ins. Co.*, 322 Mass. 438, 440–441, 77

---

**2.** Iannacchino also failed to disclose or misrepresented the truth concerning:

1) a history of shortness of breath, chest tightness, treatment related to severe pain in his right wrist, and x-rays undergone in the treatment of that wrist, and

2) his income and financial condition, i.e. he represented that his income from the previous year (1992) was $108,000 and that his estimated 1993 income was $120,000, while, in fact, his 1992 income was less than $75,000 and his 1993 income turned out to be $7,693.

N.E.2d 641 (1948); *Davidson v. Massachusetts Cas. Ins. Co.*, 325 Mass. 115, 120–121, 89 N.E.2d 201 (1949).

### B. *Iannacchino's Misrepresentations Increased NML's Risk of Loss as a Matter of Law.*

■ . It is well established under Massachusetts law that materiality of misrepresentations in the context of an application for insurance is defined as something "the knowledge or ignorance of which would naturally influence the judgment of the underwriter in making the contract at all, or in fixing the premium." *Shapiro v. American Home Assur. Co.*, 584 F.Supp at 1250, quoting *Daniels v. Hudson River Fire Ins. Co.*, 66 Mass. 416, 425 (1853). This Court concludes that NML was influenced by Iannacchino's medical condition, as disclosed in the Application, in its underwriting decision regarding the Policy, and that NML would have reacted differently had it been advised of the undisclosed information.

Massachusetts caselaw has also held that while the determination of whether non-disclosure of medical condition increased the risk of loss was commonly a question of fact, the non-disclosure of certain kinds of diseases has been found to increase the risk of loss as a matter of law. *Schiller v. Metropolitan Life Ins. Co.*, 295 Mass. 169, 177, 3 N.E.2d 384 (1936) (holding that questions of fact are presented when the condition which is not disclosed is diabetes, kidney ailments, Bright's disease, angina pectoris, sarcoma, etc. but the risk of loss is increased as a matter of law when what was not disclosed is alcoholism, cancer, or consumption).

The subject misrepresentations were made in an application for disability insurance. This is significant in that NML's underwriters specifically reviewed the Application for conditions which could have precluded Iannacchino from working in his occupation, i.e. from becoming disabled. The Application indicated that 1) Iannacchino was the sole proprietor of a printing business, 2) he was personally responsible for the day-to-day operations thereof, and 3) there were no other employees performing those responsibilities. Any condition which would have precluded

Iannacchino from managing his business would, therefore, have been particularly important to NML, because it would have been the kind of information upon which a disability . underwriter would rely. *Shapiro v. American Home Assur. Co.*, 584 F.Supp at 1249.

This Court concludes that Iannacchino's depression is precisely the kind of condition the existence of which Question 33B of the Application sought to elicit. At the time he completed the Application, Iannacchino failed to disclose either his long term treatment for stress and depression or his then recent diagnosis of extreme depression for which he was being treated medically. Consequently, NML was left to make its underwriting decision unaware that Iannacchino suffered from a condition which could have precluded him from being able to operate his own business.

Moreover, NML was unable to discover that material information through investigation because there was no mention in the Application that either Dr. Weiss or Dr. Stevens had treated Iannacchino. The failure to disclose the condition of depression, the manifestation of which is the basis of Iannacchino's disability claim; therefore increased NML's risk of loss under the Policy. There is no factual dispute that Iannacchino's misrepresentations concerned matters that increased the risk of loss under the disability Policy. Summary judgment for NML is therefore warranted in this case.

### C. *NML has Timely Contested Iannacchino's Claim and the Policy.*

Iannacchino argues that NML should be precluded from rescinding the Policy or denying his claim for disability based upon misrepresentations in the Application because NML did not contest his misrepresentations in a timely manner. NML filed its Complaint for Declaratory Judgment seeking to void the Policy and deny coverage on July 18, 1995. The terms of the policy (which comply with the requirements of M.G.L. c. 175, § 108 3(a)(2)) specifically provide:

> However, after this policy has been in force for two years from the Date of Issue, no misstatement, except a fraudulent misstatement, in the application may be used

to rescind the policy or to deny a claim for a disability or loss that starts after the two year period.

Iannacchino contends that the two-year contestability period for the Policy should run from the Policy Date of March 16, 1993, rather than from the Date of Issue. The argument flies in the face of the language of the Policy and the controlling Massachusetts statute. The Policy was issued with a Date of Issue of July 19, 1993 which was distinct from the Policy Date of March 16, 1993, used for policy anniversary purposes. Because both the Policy and the relevant statute limit the avoidance of the Policy or denial of a claim based upon misrepresentations in the Application to two years from the Date of Issue, NML is not time barred in seeking such relief.

### D. *NML's Argument that it May Deny Iannacchino's Disability Claim is Rendered Moot.*

Because NML's motion for summary judgment to avoid the Policy will be allowed, this Court need not address NML's alternative argument that it should be permitted to deny Iannacchino's disability claim which is thereby rendered superfluous.

### E. *Conclusions.*

Iannacchino misrepresented both his medical condition and course of treatment in his Application and subsequent submissions to NML. He withheld information about 1) the medical practitioners with whom he had consulted and from whom he had received treatment and 2) his financial affairs. Those misrepresentations were material and prevented NML from being able to evaluate properly the risks associated with the particular coverage Iannacchino sought and thereby increased NML's risk of loss as a matter of law.

There are no questions of material fact left to resolve in this case and entry of summary judgment is, therefore, appropriate for the plaintiff, NML. Accordingly, NML is entitled to a determination that, as a matter of law, Policy No. D951297 issued to Iannacchino is void *ab initio.*

**ORDER**

For the foregoing reasons:

1) Plaintiff's motion to strike defendant's affidavit, disregard portions of defendant's opposition to plaintiff's summary judgment motion and for the award of costs and fees is **DENIED**; and

2) Plaintiff's motion for summary judgment is **ALLOWED.**

So ordered.